UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

KIMBERLY CAPERS,

        *Plaintiff*,

  -against-

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

---------------------------------------X

**MEMORANDUM AND ORDER**

18-CV-4579 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Kimberly Capers ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner"), which found that plaintiff was not disabled, and therefore not entitled to Supplemental Security Income and disability insurance benefits under Title II of the Social Security Act (the "Act"). Plaintiff moved for judgment on the pleadings, contending that the Administrative Law Judge ("ALJ") incorrectly found that plaintiff had engaged in periods of substantial gainful activity, failed to follow the treating physician rule in weighing the medical opinion evidence, and failed to properly evaluate plaintiff's testimony. Defendant cross-moved for judgment on the pleadings.

For the reasons herein, plaintiff's motion for judgment on the pleadings is GRANTED in part, defendant's motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

The parties have submitted a joint stipulation of facts detailing plaintiff's medical history and the administrative hearing testimony, which the court incorporates by reference. (*See generally* ECF No. 18-1, Joint Stipulation of Facts ("Stip.").) Plaintiff began treatment in 2013, describing anxiety and panic attacks, which she said had become worse over time, and which caused her to stay home most of the time. (*Id.* at 2.) Dr. Stavros Sarantakos, a board-certified psychiatrist, diagnosed plaintiff with panic disorder and agoraphobia. (*Id.* at 2-3.) Dr. Sarantakos, among other medical professionals, continued to treat plaintiff over the course of the next three years. (*Id.* at 12.)

Plaintiff filed an application for Supplemental Security Income benefits ("SSI") and disability insurance benefits on December 20, 2012, with an alleged onset date of December 1, 2010, and the following alleged conditions: panic attacks, agoraphobia, and "mental illness." (*Id.* at 1.) Her application was denied on February 27, 2013. (*Id.*) Plaintiff thereafter requested a hearing before an ALJ.

Plaintiff's first hearing was held on April 22, 2014 before ALJ Wallace Tannenbaum, at which plaintiff appeared *pro se*. (*Id.*)  On May 19, 2014, the ALJ determined that plaintiff was not disabled. (*Id.*)  The Appeals Council denied plaintiff's request for review, and plaintiff subsequently filed a civil action in federal court. (*Id.*)  Plaintiff and the Commissioner stipulated to a remand, and the stipulation was so-ordered by Judge Carol Bagley Amon on June 16, 2016. (ECF No. 19, Administrative Transcript ("Tr."), at 309-10.)  On April 4, 2017, the Appeals Council issued an order that remanded the case to an ALJ, and consolidated plaintiff's claims with her subsequent application[1] for benefits. (Stip. at 1.)

On October 31, 2017, plaintiff had her second hearing, before ALJ Mark Solomon, at which plaintiff and a vocational expert testified. (*Id.*; Tr. at 262-307.)  On December 4, 2017, the ALJ found that plaintiff was not disabled. (Stip. at 1.)  The Appeals Council denied review on June 15, 2018, thus making ALJ Solomon's decision final. (*Id.* at 2.)  Plaintiff then filed the instant action. (*See generally* ECF No. 1, Complaint.)

---

[1] Plaintiff filed a subsequent claim for disability insurance benefits on July 16, 2016, alleging disability since March 31, 2016.

## **LEGAL STANDARD**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final decision of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a "'reasonable mind might accept as adequate to support a conclusion.'"  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error requires the court to ask whether the plaintiff has

"had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 10 (2d Cir. 1990)). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence

of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he [or she] has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his [or her] prior type of work, the Commissioner must find him [or her] disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quotation and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). In steps

6

one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, a court reviewing final decisions of the Commissioner is explicitly authorized to order further proceedings when appropriate.  42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.

## DISCUSSION

**I.   The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled under the regulations, the ALJ made the following determinations.

At step one, the ALJ determined that plaintiff had engaged in substantial gainful activity ("SGA") throughout 2012, throughout 2015, and during the first and fourth quarters of 2016.[2]  (Tr. at 247.)  The ALJ noted that plaintiff's earnings in 2012 of $10,900 were not above the SGA-level for that year;[3] but the ALJ also noted that plaintiff received substantial unemployment benefits, and her earnings in quarter three were well above the SGA threshold for a single quarter.  (*Id.*)  The ALJ further found that plaintiff received SGA-level earnings in the third and fourth quarters of 2015,[4] with total earnings of over $20,000 for the entire year, and SGA-level earnings in the

---

[2] The ALJ's decision also indicated that plaintiff had engaged in substantial gainful activity in the first quarter of 2013.  (Tr. at 247.)  However, this appears to be a scrivener's error, as the ALJ went on to state that "[t]here is no evidence of SGA level earnings for full years in 2011, 2013, or 2014[.]"  (*Id.* at 248.)  Further, the record indicates that plaintiff worked only for Italian American Civil Rights in 2013 and received only $1,180.25 for the entire year.  (*Id.* at 382.)

[3] SGA-level earnings in for a non-blind claimant in 2012 were $1,010 per month.  "Monthly substantial gainful activity amounts by disability type," Social Security Administration, *available at* https://www.ssa.gov/oact/cola/sga.html.

[4] SGA-level earnings in 2015 were $1,090 per month.

8

first and fourth quarters of 2016.[5]  (*Id.*)  The ALJ found that
plaintiff had not engaged in substantial gainful activity in
2011, 2013, or 2014, and thus proceeded with the five-step
analysis based on plaintiff's impairments during the periods in
which plaintiff was not working.  (*Id.* at 248.)

At step two, the ALJ determined that plaintiff had the
severe impairment of panic disorder with agoraphobia.  (*Id.*)  At
step three, the ALJ determined that plaintiff did not have an
impairment or combination of impairments that met or medically
equaled the severity of one of the listed impairments of 20
C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§
404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
416.926).  (*Id.*)  The ALJ evaluated plaintiff's impairment under
listing 12.06 (anxiety and obsessive compulsive disorders).
(*Id.*)  According to the ALJ, plaintiff had no limitations, as
opposed to "marked" or "extreme" limitations, in understanding,
remembering, or applying information; had moderate limitations
in interacting with others; had mild limitations in
concentrating, persisting, and maintaining pace; and had
moderate limitations in adapting and managing herself.  (*Id.*)
The ALJ further concluded that the record did not evince that

---

[5] SGA-level earnings in 2016 were $1,130 per month.

plaintiff had only a minimal capacity to adapt to environmental
changes or novel demands.  (*Id.* at 249.)

The ALJ then determined that plaintiff had the
residual functional capacity ("RFC") to perform a full range of
work at all exertional levels "with the following exertional
limitations: she can perform the full range of [Specific
Vocational Preparation ('SVP')[6]] level 1 or 2 unskilled jobs
[but] would require a job with only occasional close
interpersonal contact with supervisors and coworkers, no close
interpersonal contact with the general public and a job that
does not require high volume assembly line production quotas."
(*Id.*)

At step four, the ALJ concluded that plaintiff was
unable to perform her past relevant work as a data entry clerk
or telephone agent based on the vocational expert's report that
a person with plaintiff's RFC could not perform her past work.
(*Id.* at 254.)  At step five, the ALJ found that plaintiff was
capable of performing work that existed in significant numbers
in the national economy.  (*Id.* at 255.)  The vocational expert,

---

[6] SVP is "the amount of lapsed time required by a typical worker to
learn the techniques, acquire the information, and develop the
facility needed for average performance in a specific job-worker
situation."  "Specific Vocational Preparation (SVP)," O*NET OnLine,
U.S. Department of Labor, *available at*
https://www.onetonline.org/help/online/svp.  SVP level 1 requires a
short demonstration only, and SVP level 2 is anything beyond a short
demonstration, up to and including one month.  *Id.*

provided with plaintiff's age, education, work experience, and RFC, determined that plaintiff could perform the requirements of representative occupations such as a dishwasher, a hand packager, or a garment sorter. (*Id.*) Thus, the ALJ concluded that plaintiff was not "disabled" within the meaning of the Act. (*Id.* at 256.)

## II.  The ALJ's "Substantial Gainful Activity" Analysis

Plaintiff argues that the ALJ erred by finding that plaintiff engaged in substantial gainful activity throughout 2012, throughout 2015, and during the first and fourth quarters of 2016.[7] (ECF No. 14, Plaintiff's Memorandum ("Pl. Mem."), at 1.) The court finds that, contrary to the ALJ's determination, the record indicates that (1) plaintiff did not engage in substantial gainful activity in quarters one, two, and four of 2012, and (2) the record was insufficient to determine whether plaintiff engaged in substantial gainful activity in quarters one, two, and three of 2015. Accordingly, the court remands those determinations for further consideration.

---

[7] In her reply brief, plaintiff also argues that the ALJ failed to consider whether plaintiff's work attempts were "unsuccessful work attempts" under 20 C.F.R. § 404.1574(c). (*See* ECF No. 17, Plaintiff's Reply Brief, at 1-2.) The court declines to address this argument because plaintiff raised it for the first time in her reply brief. *See Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived.").

In determining whether a claimant has engaged in substantial gainful activity, an ALJ first considers whether the claimant's earnings met the SGA-levels set by the Act for the relevant year, then looks to the nature of the work, how well the claimant performed, and whether the work was performed under special conditions.  20 C.F.R. § 404.1573; *see Melville v. Apfel*, 198 F.3d 45, 54 (2d Cir. 1999) ("[A] proper assessment of whether past work was substantial gainful activity requires evaluation of, *inter alia*, how well the claimant performed her duties, whether those duties were minimal and made little or no demand on her, what her work was worth to the employer, and whether her income was tied to her productivity.").  Examples of "special conditions" that might preclude activity from being substantial gainful activity include: "(1) [The claimant] required and received special assistance from other employees in performing [her] work; (2) [the claimant was] allowed to work irregular hours or take frequent rest periods; (3) [the claimant was] provided with special equipment or [] assigned work especially suited to [her] impairment; (4) [the claimant was] able to work only because of specially arranged circumstances, for example, other persons helped [her] prepare for or get to and from [] work; (5) [The claimant was] permitted to work at a lower standard of productivity or efficiency than other employees; or (6) [the claimant was] given the opportunity to

work despite [her] impairment because of family relationship, past association with [her] employer, or [her] employer's concern for [her] welfare." 20 C.F.R. § 404.1573(c). The Act recognizes that a claimant working in a "sheltered or special environment" may receive wages that do not reflect the work she actually performed (i.e., a "subsidy"). 20 C.F.R. § 404.1574(a)(2). Thus, in such circumstances, the ALJ "will first determine whether the person received a subsidy," then "subtract the value of the subsidy from the person's gross earnings"; the resulting earnings will be evaluated against the SGA-levels to determine whether the claimant engaged in substantial gainful activity. *Id.*

### A. Employment Activity in 2012

The record indicates that plaintiff earned $10,900 in 2012: $1,923 from United Retail Incorporated in the second quarter, $2,954 from United Retail Incorporated in the third quarter, and $6,023 from Avenue Stores, LLC in the third quarter. (Tr. at 117.) The ALJ acknowledged that plaintiff's earnings for the year did not meet the SGA-level, which was $12,120 ($1,010 per month multiplied by 12 months), but noted that plaintiff received substantial unemployment insurance benefits in 2012, and her earnings during the third quarter were "well above" the SGA-level. (*Id.* at 247.)

13

Applying for and receiving unemployment benefits while claiming to be disabled "is not proof-positive" that a claimant is not actually disabled, although an ALJ may "properly consider[] [the claimant's] claim for unemployment benefits when assessing [the claimant's] credibility." *Jackson v. Astrue*, No. 05-cv-1061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009). Here, the court presumes that the ALJ referenced plaintiff's receipt of unemployment benefits to show that plaintiff could have engaged in substantial gainful activity throughout 2012. Given that this is the ALJ's sole reason for concluding that plaintiff engaged in substantial gainful activity during the first, second, and fourth quarters of 2012, the ALJ erred. The ALJ was, however, correct that plaintiff engaged in substantial gainful activity during the third quarter of 2012, as plaintiff earned above the SGA-level and did not demonstrate that she was working under special conditions.

Thus, on remand, the ALJ should account for those months in 2012 during which plaintiff did not perform substantial gainful activity (the first, second, and fourth quarters) in reaching a disability determination and, if applicable, in calculating plaintiff's disability benefits.

## B. Employment Activity in 2015

The record indicates that plaintiff earned $20,789.90 in 2015: $4,173 from Italian American Civil Rights in the third

14

quarter, $6,755 from Nine West in the fourth quarter, $1,845 from Italian American Civil Rights in the fourth quarter, and the remaining amount from Italian American Civil Rights at other points during the year.[8] (Tr. at 382, 385.) It is unclear whether plaintiff worked under special conditions such that her earnings in 2015 did not reasonably reflect her performance.

Plaintiff argues that she obtained her jobs in 2015 through friends and family, and that she performed these jobs under special accommodations. (Pl. Mem. at 3.) Plaintiff testified that her sister was the director of Italian American Civil Rights' afterschool program, and as a result, plaintiff was able to work there for a little over one year. (Tr. at 279-80.) Plaintiff testified that her sister allowed her to work roughly two hours per day, even though the program was roughly three hours long, because plaintiff "couldn't handle" working more than that. (*Id.* at 281-82.) Plaintiff testified that her sister drove her to and from work. (*Id.* at 282.) Lastly, plaintiff testified that she missed work many times because of her "situation," but her sister understood, and was lenient with her. (*Id.* at 284.)

---

[8] It appears that plaintiff earned $14,035 total from Italian American Civil Rights. (Tr. at 382.) However, the record does not indicate which quarters plaintiff earned that amount beyond $4,173 in quarter three and $1,845 in quarter four. (*Id.* at 385.)

Although it appears that some accommodations were made for plaintiff in order for her to work for the afterschool program, there is insufficient evidence to conclude that plaintiff received a "subsidy," or that plaintiff was being overpaid in light of her actual performance.  The ALJ's failure to develop the record on this point constituted error.  *See Pogozelski v. Barnhart*, No. 03-cv-2914, 2004 WL 1146059, at *15 (E.D.N.Y. May 19, 2004) (remanding where "there [wa]s not enough evidence in the record . . . to determine whether [the claimant]'s earnings were, in effect, subsidized . . . .").

The court further finds that plaintiff did not meet her burden to demonstrate that her job at Nine West was specially accommodated.  Regardless of whether plaintiff's friend got plaintiff the job (which, under 20 C.F.R. § 404.1573(c)(6), is irrelevant), it does not appear that anyone made special accommodations for plaintiff once she began work. Plaintiff testified that when she informed her supervisor of her situation, her supervisor responded: "Let's just see . . . how it plays out."  (Tr. at 288.)

On remand, the ALJ should develop the record more fully, and determine whether plaintiff received a subsidy while working for Italian American Civil Rights in 2015.  If plaintiff did receive a subsidy, and if plaintiff's earnings for the first, second, and third quarters of 2015 fall below the SGA-

16

level after subtracting that subsidy, the ALJ should find that
plaintiff was not engaged in substantial gainful activity during
the first, second, and third quarters of 2015.  As plaintiff's
fourth quarter earnings in 2015 from Nine West alone surpassed
the SGA-level, it does not matter whether plaintiff's earnings
from Italian American Civil Rights during the fourth quarter of
2015 were subsidized.

### C. Employment Activity in 2016

The record indicates that plaintiff earned $12,557 in
2015, achieving SGA-level earnings of $7,393 in the first
quarter from Nine West and SGA-level earnings of $5,164 in the
fourth quarter from Italian American Civil Rights ($170) and APC
Workforce Solutions ($4,994).  (*Id.* at 385.)  The court agrees
with the ALJ's conclusion that plaintiff engaged in substantial
gainful activity in the first and fourth quarters of 2016.

There is no evidence to suggest that plaintiff's work
at Nine West or APC Workforce Solutions was specially
accommodated.  Plaintiff did, however, testify that some
accommodations were made for her in order for her to work at
Italian American Civil Rights; as discussed, there is
insufficient evidence to conclude whether plaintiff received a
"subsidy," or whether plaintiff was being overpaid in light of
her actual performance.  Although the ALJ's failure to develop
the record in this regard was erroneous, *see Pogozelski*, 2004 WL

17

1146059, at *15, such error was harmless with respect to the ALJ's findings for 2016. Even if the entirety of plaintiff's earnings from Italian American Civil Rights during quarter four were considered a subsidy (and thus were subtracted from her total earnings for that quarter), plaintiff's fourth quarter earnings would still be above the SGA-level. Therefore, this court finds that substantial evidence supports the ALJ's finding that plaintiff engaged in substantial gainful activity in quarters one and four of 2016.

## III. The Weighing of the Medical Opinion Evidence

Plaintiff also argues that the ALJ violated the treating physician rule by finding one of Dr. Sarantakos's opinions to be "totally unsupported," and by according Dr. Sarantakos's other opinions "little" and "minimal" weight, rather than controlling weight. (Pl. Mem. at 5.) Dr. Sarantakos is a psychiatrist with whom plaintiff began treatment in 2013, and Dr. Sarantakos continued to provide plaintiff treatment through at least 2016. (*See* Stip. at 2, 12.) The court agrees that the ALJ's reasons for assigning Dr. Sarantakos's opinions less than controlling weight were insufficient

Under the regulations in place at the time plaintiff filed her claim, the ALJ was to "defer 'to the views of the physician who has engaged in the primary treatment of the

claimant.'" *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir. 2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).[9] "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). "Rather, 'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Burgess*, 537 F.3d at 128 (describing this principle as the "treating physician" rule). A treating source is defined as a plaintiff's "own physician, psychologist, or other acceptable medical source" who has provided plaintiff "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 404.1502; *see also Bailey v. Astrue*,

---

[9] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule. *See* 20 C.F.R. § 404.1527(c)(2). Plaintiff filed her claims on December 20, 2012, and July 16,2016. Accordingly, the court applies the treating physician rule in the instant case. *See, e.g., Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

815 F. Supp. 2d 590, 597 (E.D.N.Y. 2011) ("A treating source's medical opinion on the nature and severity of an impairment is given controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."). Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [as] an essential diagnostic tool." *Green-Younger*, 335 F.3d at 107.

When a treating physician's opinion is not afforded controlling weight, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see also* 20 C.F.R. § 416.927(c)(2) (requiring the Commissioner to "always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion"). The Commissioner's regulations enumerate several factors that may guide an ALJ's determination of what weight to give to a treating source's opinion: (1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ is not required to cite

20

each factor explicitly in the decision, but must ensure he applies the substance of the rule.  *Halloran*, 362 F.3d at 32. The Second Circuit has "consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand."  *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *see also Halloran*, 362 F.3d at 32–33.

        Dr. Sarantakos, with whom plaintiff began treatment in September 2013, opined that plaintiff was "unable to handle the stresses of employment" due to her severe anxiety.  (Tr. at 216, 224.)  Dr. Sarantakos recognized that plaintiff was working part-time, but noted that plaintiff experienced many episodes of decompensation, and had trouble interacting with clients while working as a telephone operator.  (*Id.*)  In a medical impairment questionnaire (covering September 2013 to July 2014), Dr. Sarantakos indicated that plaintiff suffered from panic disorder with agoraphobia, anxiety disorder, and major depressive disorder.  (*Id.* at 227.)  In support of his diagnoses, Dr. Sarantakos cited plaintiff's symptoms of depressed mood, persistent/generalized anxiety, feelings of guilt or worthlessness, illogical thinking, obsessions and compulsions, fears of physical illness, pathological dependency, intrusive recollections of a traumatic experience, persistent irrational fears, recurrent panic attacks, and excessive sleep.  (*Id.* at

228.)  Dr. Sarantakos indicated that the most frequent and severe upshots of plaintiff's impairments were her persistent irrational fears of dying, her obsessional thinking, and her inability to use public transportation without a family member. (*Id.* at 229.)  He further noted that plaintiff, while working only a few hours per week at a program that her older sister directed, decompensated when she felt too much pressure or when her sister was unable to meet her at the bus.  (*Id.*)  Finally, Dr. Sarantakos concluded that plaintiff had a number of limitations, including: moderate limitations in sustaining an ordinary and unsupervised routine, working with others, and making simple work-related decisions; moderate-to-marked limitations in understanding and remembering, in accepting and carrying out instructions, in concentrating for extended periods, in responding to criticism from supervisors, in being aware of hazards and taking appropriate precautions, and in setting realistic goals and making plans; and marked limitations in maintaining a schedule, completing a workday without interruptions from psychological symptoms, performing at a consistent pace without unreasonably frequent or long rest periods, responding to workplace changes, and traveling to unfamiliar places or using public transportation.  (*Id.* at 230, 559.)

The ALJ first determined that Dr. Sarantakos's account that plaintiff was unable to handle the stresses of employment was "totally unsupported," finding that such conclusions were based on plaintiff's "self-serving" statements rather than evidence, and were contradicted by the fact that plaintiff worked in 2012 and 2014, worked at SGA-levels for 2015 and 2016, and worked in the first quarter of 2017. (*Id.* at 252-53.)  The ALJ then gave little weight to Dr. Sarantakos's opinions that plaintiff could not work full-time due to the severity of her panic attacks and needed assistance traveling to and from work, because plaintiff had SGA-level earnings from 2014 to 2016 after having previously worked for sixteen years until she was laid off in 2010.  (*Id.* at 253.)

First, the fact that Dr. Sarantakos's opinions were based on plaintiff's own statements is not surprising, given that Dr. Sarantakos was plaintiff's treating psychiatrist. "Objective" findings are not the exclusive means by which to find that a claimant is disabled. *Green-Younger*, 335 F.3d at 108.  Indeed, "a patient's report of complaints, or history, is an essential diagnostic tool." *Id.* at 107; *see* 20 C.F.R. 404.1529(c)(3) ("Because symptoms . . . are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [a claimant's] medical sources or nonmedical sources report, which can reasonably be accepted

as consistent with the objective medical evidence and other
evidence, will be taken into account . . . in reaching a
conclusion as to whether [the claimant is] disabled.").  This is
particularly true when diagnosing a psychiatric impairment.
"Mental impairments are difficult to diagnose," *Polis v. Astrue*,
No. 09-cv-379, 2010 WL 2772505, at *10 (E.D.N.Y. July 13, 2010),
and are "not as readily amenable to substantiation by objective
laboratory testing as [physical] medical impairment[s]," *Poulin
v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987) (quoting *Lebus v.
Harris*, 526 F. Supp. 56, 60 (N.D. Cal. 1981)).  *See also Melia
v. Colvin*, No. 14-cv-00226, 2015 WL 4041742, at *19 (N.D.N.Y.
July 1, 2015) (ALJ erred in discounting psychological evaluation
that "relied heavily on the subjective report of symptoms,
history and limitations provided by [p]laintiff").

        The ALJ did not provide a sufficient basis for the
conclusion that Dr. Sarantakos merely accepted plaintiff's self-
reports without independently assessing them as her treating
psychiatrist.  The record reflects that Dr. Sarantakos's opinion
was consistent with plaintiff's treatment records over the
years.  (*See, e.g.*, Tr. at 456, 469.)  Relatedly, the ALJ had no
basis to conclude that plaintiff's reports were "self-serving,"
given that plaintiff received treatment from Dr. Sarantakos for
over three years, and was never documented as "malingering."
Further, the ALJ's rationale for discounting Dr. Sarantakos's

opinion is at odds with the ALJ giving substantial weight to an opinion of Dr. Johanina McCormick, a consultative examiner, who conducted a largely similar evaluation on a one-time basis. (*See id.* at 253.)

Second, if plaintiff was indeed engaged in substantial gainful activity during those periods in which Dr. Sarantakos opined that plaintiff was unable to work, then the ALJ could reasonably rely on that as part of his explanation for deciding to accord Dr. Sarantakos's opinion less than controlling weight. On remand, the weight accorded to Dr. Sarantakos's opinions may depend in part on the ALJ's revised substantial gainful activity analysis.  If the ALJ decides to discount Dr. Sarantakos's opinion on remand, the ALJ should consider whether something between "controlling" and no weight or "little" weight would be appropriate.

The ALJ is reminded that a decision discounting a treating physician's opinion "must 'comprehensibly set forth [the ALJ's] reasons for the weight assigned to [the] treating physician's opinion.'"  *Burgess*, 537 F.3d at 129 (quoting *Halloran*, 362 F.3d at 33).  On remand, if the ALJ assigns Dr. Sarantakos's opinions less than controlling weight, the ALJ must adequately explain the specific reasons for doing so.

## IV.  Evaluation of Plaintiff's Testimony

Finally, plaintiff argues that the ALJ erred when he found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was inconsistent with the evidence.  (Pl. Mem. At 12.)

An ALJ evaluating a claimant's subjective complaints of her symptoms must first decide "whether the claimant suffers from a medically determinable impairment[] that could reasonably be expected to produce the pain alleged."  20 C.F.R. § 404.1529(c).  Second, the ALJ must "evaluate the intensity and persistence of those symptoms considering all of the available evidence."  *Id.*  If a claimant's "pain [or symptom] contentions are not substantiated by the objective medical evidence," the ALJ must assess the claimant's credibility.  *Id.*  "Remand is appropriate where an ALJ does not follow these steps."  *Peck v. Astrue*, No. 07-cv-2762, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010).

Here, the ALJ found plaintiff's testimony inconsistent with the evidence because (1) plaintiff represented she was "able" to work in order to obtain unemployment benefits, and (2) plaintiff alleged difficulties working when "there [was] no credible evidence" of such difficulties, and plaintiff worked for sixteen years for the same employer until 2010, only leaving when the company shut down.  (Tr. at 252.)  The court finds that

the ALJ's reasons for finding plaintiff's testimony inconsistent with the record were erroneous for the following reasons.

First, as the ALJ recognized, the fact that plaintiff presented herself as "able" to work in order to obtain unemployment benefits is not dispositive. *See Ginsberg v. Astrue*, No. 05-cv-3696, 2008 WL 3876067, at *17 (E.D.N.Y. Aug. 18, 2008) (affirmation in support of employment benefits "alone does not constitute substantial evidence of plaintiff's general lack of credibility"). Specifically, there is no evidence as to what kind of work plaintiff had in mind when she made this representation; without more, it is unclear how the ALJ reasonably could have concluded that plaintiff believed she was able to perform the work that the ALJ found her capable of in the RFC determination.

Second, plaintiff's work history up until 2010 is irrelevant, because plaintiff held that job prior to the alleged onset of her disability. The ALJ should not have relied on plaintiff's prior work experience as evidence to discount her testimony.

On remand, if the ALJ discounts plaintiff's testimony, the ALJ must specify the ways in which the testimony was inconsistent with the record, beyond just the fact that plaintiff applied for unemployment benefits. The court notes that plaintiff's testimony regarding her symptoms appears to be

consistent Dr. Sarantakos's opinions, who reported that plaintiff: decompensated while working for Italian American Civil Rights when she felt too much pressure or when her sister was unable to meet her at the bus (Tr. at 229); had moderate limitations in sustaining an ordinary and unsupervised routine, working with others, and making simple work-related decisions (*id.* at 230, 559); had moderate-to-marked limitations in understanding and remembering, in accepting and carrying out instructions, in concentrating for extended periods, in responding to criticism from supervisors, in being aware of hazards and taking appropriate precautions, and in setting realistic goals and making plans (*id.*); and had marked limitations in maintaining a schedule, completing a workday without interruptions from psychological symptoms, performing at a consistent pace without unreasonably frequent or long rest periods, responding to workplace changes, and traveling to unfamiliar places or using public transportation (*id.*).

In sum, the court finds that the ALJ failed to properly evaluate plaintiff's testimony and remands with the directive that the ALJ consider plaintiff's testimony under the standard set forth in 20 C.F.R. § 404.1529(c), and in accordance with this Memorandum and Order.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings is GRANTED in part, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          July 24, 2020

                                        /s/
                              _____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge